## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) JOHN E. QUIGLEY;<br>(2) FRANCES QUIGLEY,<br>on behalf of the ConocoPhillips Savings<br>Plan and a class of similarly situated<br>participants of the Plan,<br><br>　　　　　　Plaintiffs,<br>v.<br><br>(1) CONOCOPHILLIPS COMPANY;<br>(2) THE CONOCOPHILLIPS COMPANY<br>BENEFITS COMMITTEE; and<br>(3) JOHN/JANE DOES 1-5,<br><br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.　CIV-23-62-SLP |

## CLASS ACTION COMPLAINT

Plaintiffs, John E. Quigley and Frances Quigley ("Plaintiffs"), on behalf of the ConocoPhillips Savings Plan (the "Plan") and a class of similarly situated participants in the Plan, bring this action against ConocoPhillips Company ("ConocoPhillips"), the ConocoPhillips Company Benefits Committee and its individual members ("the Committee") pursuant to §§ 404, 405, 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1104, 1105, 1109 and 1132.

## NATURE OF THE ACTION AND SUMMARY OF CLAIMS

1.　　Plaintiffs are participants in the Plan. They bring this action on behalf of the Plan and a class of participants in the Plan whose retirement assets were invested in the "Phillips 66 Stock Fund" or the "Phillips 66 Leveraged Stock Fund" (the "Phillips 66 Funds" or "Funds") from January 18, 2017 to the date of judgment in this Action (the "Class Period").

2.      Defendants breached their fiduciary duties of loyalty, prudence, and diversification under ERISA § 404, 29 U.S.C. § 1104 in various ways, including, but not limited to, the following.

3.      Defendants improperly allowed the Plan to offer the Phillips 66 Funds as investment options for the Plan, even though they knew that the Funds were undiversified and had an established track record of being more volatile and riskier for Plan Participants than prudently diversified alternative investment options, without any expectation of higher returns.

4.      Defendants improperly allowed the Plan to maintain its investment in the Phillips 66 Funds, even though they knew that the Funds were undiversified and had an established track record of being more volatile and riskier for Plan Participants than prudently diversified alternative investment options, without any expectation of higher returns.

5.      Defendants failed to liquidate the Funds' substantial holdings in Phillips 66 common stock thereby subjecting the Plan and its participants to the risks associated with being too heavily invested in one company ("company risk") and one industry ("industry risk").

6.      Prudent fiduciaries of retirement plans would not have permitted such a concentrated investment in the volatile stock of a single company, particularly for so long. Defendants breached their duties under ERISA by allowing the Plan to have an unreasonably high percentage of its assets invested in Phillips 66 common stock during the Class Period.

7.    The Plan's overly concentrated position caused the Plan and participant Plan accounts to lose over $260 million as the price of Phillips 66 stock fell during the Class Period relative to the performance of prudent alternatives, including diversified US Stock Funds, into which Defendants should have transferred the Phillips 66 stock because it offered demonstrably lower risk without sacrificing any expected return.

8.    As a result of these breaches, each Defendant is liable to the Plan for all losses resulting from each of their breaches of fiduciary duty. Plaintiffs also seek equitable relief.

9.    Fiduciaries of a defined contribution plan like the Plan may be liable for breach of fiduciary duty even when the Plan investment is directed by the Plan participant because participant choice is irrelevant. *Hughes v. Northwestern University, et al*, 142 S.Ct. 737, 743 (2022) (reversing the Seventh Circuit for "relaying on the participants' ultimate choice over their investments to excuse allegedly imprudent decisions by" defendant fiduciaries.). *Hughes* underscores that "[i]f the fiduciaries fail to remove an imprudent investment from the plan within a reasonable time, they breach their duty." *Hughes*, 142 S. Ct. at 742.

10.    ConocoPhillips is liable for the acts of the Committee and its members because the Committee and its members were acting within the scope of their employment with ConocoPhillips. ConocoPhillips also failed to adequately monitor the Committee and its members to ensure that they were meeting their fiduciary obligations.

## JURISDICTION AND VENUE

11.    **Subject Matter Jurisdiction**. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws

of the United States and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), which provides that federal courts have exclusive jurisdiction over of actions brought under Title I of ERISA.

12.    **Personal Jurisdiction.** This Court has personal jurisdiction over ConocoPhillips because it transacts business in, employs people and has significant contacts with this District, and because ERISA provides for nation-wide service of process.

13.    This Court has personal jurisdiction over the Committee and its members because they transact business in, and has significant contacts with, this District, and because the Plan is for participants and beneficiaries in this District, and because ERISA provides for nationwide service of process.

14.    **Venue.** Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because ConocoPhillips does business in, and may be found in, this District and employed both Plaintiffs and other Plan participants in this District.  Before and during the Class Period, ConocoPhillips owned, leased and/or operated hundreds of thousands of acres of land in this District and maintained several offices within this District. ConocoPhillips continues to own, lease and/or operate hundreds of wells for oil and natural gas exploration in this District.  Upon information and belief, thousands of Class Members reside in this District.

## PARTIES

### Plaintiffs

15.    Plaintiff John E. Quigley is a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1102(7), and held shares of the Phillips 66 Funds in his Plan account during the Class Period. He is a resident of El Reno, Oklahoma.

4

16.     Frances Quigley is a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1102(7), and held shares of the Phillips 66 Funds in her Plan account during the Class Period. She is a resident of El Reno, Oklahoma.

17.     During the Class Period, the value of the Phillips 66 Funds held in Plaintiffs' accounts diminished considerably and they, like thousands of other Plan participants, suffered losses resulting from Defendants' breaches of fiduciary duty.

**Defendants**

18.     The Benefits Committee (the "Committee") is an unincorporated association. As alleged below, at all relevant times, the Committee administered the Plan and was a fiduciary of the Plan.

19.     The Members of the Committee (John Doe Defendants 1–5) and any individual or entity to whom the Committee delegated any of its fiduciary functions, the nature and extent of which have not been disclosed to Plaintiffs, are fiduciaries of the Plan under 29 U.S.C. § 1002(21) because they exercised authority or control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility respecting the administration of the Plan.

20.     Defendant ConocoPhillips is a Delaware Corporation with its principal place of business in Houston, Texas. ConocoPhillips operates in 14 countries, employs roughly 9,900 employees, and has assets of over $90 billion.

## DESCRIPTION OF THE PLAN

21.     The Plan is an employee benefit plan within the meaning of ERISA §§ 3(3) and 3(2)(A), 29 U.S.C. §§ 1002(3) and 1002(2)(A).

22.     The Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34) because it provides individual accounts for each participant and benefits based upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which could be allocated to such participants' accounts.

23.     On April 30, 2012, ConocoPhillips transferred what it called its "downstream businesses," including its refining, marketing and transportation operations, to Phillips 66 and spun-off Phillips 66 from ConocoPhillips. Phillips 66 became a separate, independent company. Phillips 66 and ConocoPhillips referred to the transactions that effectuated the spin-off as the "Separation."  *See*, *e.g.*, ConocoPhillips 2013 10-K at p. 30.

24.     In connection with the "Separation," ConocoPhillips and Phillips 66 entered into an Employee Matters Agreement ("EMA") providing that employees of Phillips 66 would no longer participate in benefit plans sponsored or maintained by ConocoPhillips.

25.     In April 2012, after the Separation of Phillips 66 from ConocoPhillips was completed, Participant Plan accounts invested in the ConocoPhillips Stock Fund and the ConocoPhillips Leveraged Stock Fund received 1 share of Phillips 66 stock for every 2 shares of ConocoPhillips stock, as was true of all ConocoPhillips shareholders. In the Plan, these new shares were immediately transferred to a new Phillips 66 Stock Fund and a new Phillips 66 Leveraged Stock Fund (the "Funds").

26.     Because Phillips 66 had separated from ConocoPhillips and employees who went with the Phillips 66 businesses were no longer employed by ConocoPhillips, and because the Plan was only available to ConocoPhillips employees, the Funds were not invested in qualified employer securities, which would have protected Defendants from ERISA's requirements of diversification and prudence with respect to diversification.

27.     At the end of 2012, the Plan held approximately $767,455,000 worth of Phillips 66 stock between the two Funds, representing just under 15% of the Plan's assets.

28.     At all relevant times, the Committee has been responsible for selecting the Plan's investment options.

29.     ConocoPhillips's board of directors appoints the members of the Committee.

## SUBSTANTIVE ALLEGATIONS

**A.     Defendants breached ERISA's duty of prudence by allowing the Plan to invest in the Phillips 66 Funds during the Class Period.**

30.     ERISA imposes strict fiduciary duties on fiduciaries. ERISA § 404(a), 29 U.S.C. § 1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of providing benefit to participants and their beneficiaries; and defraying reasonable expenses of administering the plan; with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV.

31.    In addition to the duty to select and offer prudent investments for a Plan, a fiduciary has "a continuing duty of some kind to monitor investments and remove imprudent ones" and "a plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1829 (2015).

32.    Fiduciaries must try to "(1) maximize retirement savings for participants while (2) avoiding excessive risk." *Fifth Third Bancorp. v. Dudenhoeffer*, 573 U.S. 409, 420 (2014); *Tatum v. RJR Pension Inv. Comm.*, 855 F.3d 553, 566 (4th Cir. 2017) ("Fiduciaries ordinarily have a duty to seek the lowest level of risk and cost for a particular level of expected return. . ."); 29 U.S.C. § 1104(a)(1)(c) (requiring fiduciaries to "diversify[] the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so).

33.    An investment is not prudent if it "is riskier than alternative available investments with commensurate rates of return." 29 C.F.R. § 2509.94-1. For this reason, non-employer single stock funds are "generally imprudent." *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 424 (4th Cir. 2007).

34.    Defendants should have been particularly vigilant in monitoring the Phillips 66 Funds because they are single-stock funds comprised entirely of Phillips 66 stock, which is a risky and volatile investment subject to large price swings, and because they represented such a substantial percentage of the Plan's overall assets.

35.    While a single-stock fund, particularly in a volatile industry like energy, is always risky, there should have been heightened cause for concern because Phillips 66 had,

post-spinoff and prior to the start of the Class Period, established a track record of being particularly volatile.

36.    Phillips 66 stock began trading separately from ConocoPhillips on April 30, 2012. The track record established between April 30, 2012 and December 31, 2016 was sufficient for a prudent fiduciary to recognize that: (1) Phillips 66 Stock was more volatile than diversified investments; and (2) this higher risk did not come with an expectation of higher reward. As a result, a prudent fiduciary would have realized before December 31, 2016, and during the entirety of the Class Period, that prudence and diversification required divestiture of the Phillips 66 Stock Funds in the ConocoPhillips Plan. Additionally, the Plan's heavy concentration in Phillips 66 Stock exposed the Funds and the Plan to the risk of large losses.

37.    By the end of 2016 the 3-year volatility (measured by standard deviation of return) was 26% for Phillip 66 stock compared to just 13.4% for the S&P 500 Index, a broad measure of large cap US equities available in diversified index funds prudently offered for retirement plan investments. In other words, the Plan's concentrated investment in Phillips 66 was nearly twice as risky as diversified alternatives, as measured by long-term (3-year) measurements available at the start of the Class Period.[1]

38.    Meanwhile, prudent investors had no reason to expect higher returns than the market as a whole from the publicly traded Phillips 66 stock. *Dudenhoeffer*, 573 U.S. 409,

---

[1] Represented by The Vanguard Institutional Index Fund, VINIX, whose largest holdings are Apple Inc. (4.03% of the Fund), Microsoft Corp. (2.72% of the Fund), Facebook (1.92% of the Fund) and Amazon.com (1.84% of the Fund.)

426–27 (2014) (investors in single stocks have "little hope of outperforming the market" because the market for U.S. publicly traded large cap stocks is "presumptively efficient"). Defendants never indicated that they had any reason to believe special circumstances existed for them to believe Phillips 66 stock was underpriced or likely to outperform the domestic equity market as a whole.

39.    Moreover, the Plan's concentration in Phillips 66 stock was massively out of line with prudent diversification practices.

40.    At the end of 2015, the Plan had $769,571,000 invested in Phillips 66 common stock through the Funds, representing over 14 percent of the Plan's total assets. By comparison, other than ConocoPhillips common stock, investment in which is expressly permitted under ERISA as a qualified employer security despite its imprudence, the next largest equity holding of the Plan were shares of DuPont, representing only $56,914,000 (1% of Plan assets).

41.    At the end of 2016, the Plan had $700,911,000 in Phillips 66 stock through the Funds (13% of plan assets), compared to $51 million invested in DuPont (<1% of plan assets). During 2017, the smaller concentrated holding in DuPont was removed from the Plan, leaving the Funds as the sole non-employer single stock investments in the Plan. The concentration in the Funds was an imprudent and unnecessary undiversified risk for the workers and retirees who depend on the Plan for their retirement savings.

42.    By comparison, total US stock market index funds invest less than 0.5% of their assets in Phillips 66 stock. Indeed, in December 2016, only 355 mutual funds tracked by Morningstar had any Phillips 66 stock at all, and of those 355, the median fund invested

just 0.28% of its assets in Phillips 66, and less than 1% of them invested more than 3% in Phillips 66.[2]

43.     At the end of 2016, out of all mutual funds offered in the world, the one with the highest concentration of Phillips 66 stock, the Cavanal Hill World Energy Institutional Fund, held 4.23% of its assets in Phillips 66 stock. Owning three times the concentration of Phillips 66 stock as the most concentrated mutual fund in the world, and over **_50 times_** the concentration of prudently diversified mutual funds, was plainly imprudent for the investment of retirement assets.

44.     In contrast to the 401(k) Plan, in which the risk of loss is borne by the employees and retirees of ConocoPhillips, the risk of loss in a pension plan is borne by the company. ConocoPhillips had a pension plan, called the "ConocoPhillips Retirement Plan," which was also administered by the Committee. It invested less than $10 million (0.4% of its assets) in Phillips 66 Stock, even while exposing participants' retirement savings in the 401(k) Plan to concentrations exceeding 10%.[3]

45.     The Plan's heavy, overly-concentrated position in an excessively risky security should have been a red-flag to the Defendants that they needed to diversify the

---

[2] Vanguard Total Stock Market Index Annual Report for year ending 12/31/2016, obtained on Morningstar.com, shows the top 50 investments, including some as small as 0.4% of assets, but Phillips 66 is not identified. As of October, 2016, only 253 mutual funds reported holding any stock in Phillips 66, and of those the median holding was 0.26%. By January 2017, this was down to 245 funds with a median holding of 0.23% and by February 2017, it was 240 funds with a median holding of 0.2%.

[33] This value is as of December 31, 2016, although the percentage of defined benefit plan assets in Phillips 66 did not materially change before or during the Class Period. For example, on December 31, 2014, the Defined Benefit Plan held $11,565,210 worth of Phillips 66 stock (0.4% of that plan's assets at the time).

Plan's assets to avoid the risk of large losses and to ensure the Plan's assets were invested prudently, as they did with the Defined Benefit Plan and with the DuPont holding in the 401(k) Plan. Defendants, however, failed to independently assess the Phillips 66 Funds to ensure they were prudent and to continually monitor these investments' inclusion in the Plan.

46.    Because Conoco Phillips was also in the energy business, a prudent fiduciary would consider the Plan's investment in ConocoPhillips common stock as part of any review of the prudence of offering the Phillips 66 Stock Funds as investment options under the Plan.

47.    The Phillips 66 Funds remained an investment option for the Plan's participants because Defendants did not follow an appropriate process in evaluating the prudence of the Funds. Defendants did not perform an independent review, as they were required to do, and their failures cost the Plan participants millions of dollars.

48.    Defendants did not independently assess whether to keep the Phillips 66 Funds as investment options even as they recognized that Phillips 66 stock was not a "qualifying employer security" for the Plan. ERISA § 404(a)(2), 29 U.S.C. § 1104(a)(2), which provides that ERISA's duties of prudence and diversification are not violated "by acquisition or holding of…qualifying employer securities."

49.    Defendants represented that Phillips 66 stock was not a "qualifying employer security" for the Plan, but rather classified it as "corporate stocks (other than employer securities)." *See* Plan's 2016 5500s at Schedule H at Part I(1)(c)(B).

50.     At no time has Phillips 66 stock been a "qualifying employer security" to excuse Defendants from adhering to the fiduciary duties imposed by ERISA.

51.     Defendants kept the Phillips 66 Stock Funds as legacy funds in the Plan without considering whether Phillips 66 was a prudent investment. If the Defendants had performed a proper investigation and fulfilled their duty of prudence under ERISA, they would have realized that the Phillips 66 Funds were not suitable options for the investment of retirement assets, particularly at the levels at which the Plan was invested at them. Indeed, Defendants made this determination with respect to the Retirement Plan, where corporate dollars were at risk, and maintained far less extensive investments in Phillips 66.

52.     Defendants' failure to remove the Phillips 66 Stock Funds as investment options under the Plan occurred at the same time Defendants were reducing the Defined Benefit Plan's investment in Phillips 66 stock and eliminating the Plan's only other non-employer single security investment option, DuPont.  Defendants did not, however, take any action concerning the Phillips 66 Stock Funds.

53.     The Defendants' failure to remove the Phillips 66 Stock Funds as Plan investment options has cost the Plan's participants over $260 million compared to the returns they would have enjoyed had the assets been moved into prudently diversified alternative equity options like the Vanguard Institutional Index Fund, another plan investment option, at the beginning of the Class Period.

54.     While the Funds were closed to new contributions and exchanges, they were still "investment funds" that the Plan offered to participants to invest their retirement savings.  SPD at 12, 44 and 45. Defendants still had the duty "to properly monitor

13

investments and remove imprudent ones." *Tibble*, 135 S. Ct. at 1829. Accordingly, Defendants had a fiduciary duty to remove the Funds as Plan investment options and sell all Plan assets held in those funds.

**B.    Defendants Violated Their Duty to Diversify the Plan's Investments.**

55.    ERISA requires prudent fiduciaries to diversify the plan's investments "so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." *See* ERISA § 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C). ERISA's legislative history indicates that a fiduciary should not invest an "unreasonably large percentage" of plan assets in a "single security," in "one type of security," or in "various types of securities that are dependent upon success of one enterprise or upon conditions in one locality." *See* ERISA Conference Report on H.R. 2, H.R. Rep. No. 1280, 93d Cong., 2d Sess. 300, 304 (Aug. 12, 1974).

56.    Because the value of any single stock is tied to the fortunes of one company, holding a single stock is very risky. By contrast, people who hold a diverse portfolio of stocks and bonds face less risk because they have only a small stake in each company. *See*, N. Gregory Mankiw, Principles of Economics 546 (1998); *DiFelice*, 497 F.3d at 415; *Steinman v. Hicks*, 352 F.3d 1101, 1104 (7th Cir. 2003).

57.    Defendants acknowledged this investment principle when they managed to have only a limited position in Phillips 66 in the Retirement Plan, which the Committee also managed, and when they eliminated DuPont stock from the Plan.

58.    Defendants did ***not*** diversify the Plan's assets with respect to Phillips 66. At the beginning of the Class Period, the Plan had approximately 13% of its assets in the

Phillips 66 Funds. For a retirement plan like the Plan, it is far too high of a concentration and exposed the Plan to the large losses suffered during the Class Period.

59.     Moreover, as alleged above, the lack of diversification was compounded by the Plan's massive investments in Conoco Phillips common stock.

60.     Given the Plan's excessive holdings in the Phillips 66 Stock Funds, its enormous investment in Phillips 66 stock, and the acknowledged risks associated with a lack of diversification, a prudent fiduciary would have sold the Phillips 66 stock to diversify the Plan's assets and not allow Plan participants to be exposed to the imprudent and uncompensated risk of large losses in their retirement savings.

61.     Defendants, however, did nothing to diversify the Plan's assets. Even at the end of 2021, the Plan still had more than $259 million, or nearly 5% of its assets, invested in Phillips 66 stock. *See* Plan's 2021 Form 5500. At the same time, it also held more than $1 billion, or 18.2%, in Conoco Phillips stock.

## DEFENDANTS WERE FIDUCARIES

62.     ERISA requires that every plan name one or more fiduciaries who have "authority to control and manage the operation and administration of the plan." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).

63.     ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who perform fiduciary functions for a retirement plan. A person or entity is considered a fiduciary to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or

disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

64.    Each of the Defendants was a fiduciary during the Class Period within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) as either a named or a *de facto* fiduciary with respect to the Plan, and each owed fiduciary duties to the Plan and its participants under ERISA.

65.    This Committee has been a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) because it has been the Plan Administrator.

66.    The Committee is the governing body for the Plan and is responsible for (among other things) the administration of the Plan and the selection of trustees and others who provide investment services to the Plan. See, Summary Plan Description ("SPD"), p. 30.

67.    The Committee is the named fiduciary of the Plan.

68.    The Committee is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercised discretionary authority or control over management of the Plan. *See, e.g.*, 2021 SPD at 30 ("The benefits committee is the governing body for the Plan… The benefits committee is responsive for (among other things) establishing and enforcing rules and procedure for… the selection of trustees and others who provide investment services to the Plan.")

16

69.     ConocoPhillips is the sponsor of the Plan under 29 U.S.C. § 1002(16)(B) and a named fiduciary under 29 U.S.C. § 1002 (A)(2). ConocoPhillips is a fiduciary because it exercised discretionary authority or control over management of the Plan, exercised authority or control over the management or disposition of Plan assets and/or had discretionary authority to appoint and monitor Plan fiduciaries who had authority or control over management or disposition of Plan assets.

## CLASS ACTION ALLEGATIONS

70.     Plaintiffs bring this action derivatively on the Plan's behalf pursuant to ERISA §§ 409 and 502, 29 U.S.C. §§ 1109 and 1132, and as a class action pursuant to Rules 23(a), (b)(1), and/or (b)(2) of the Federal Rules of Civil Procedure on behalf of the Plan, Plaintiffs, and the following class of similarly situated persons (the "Class"):

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the ConocoPhillips Savings Plan at any time from January 18, 2017 to the present, inclusive (the "Class Period"), and whose Plan accounts included investments in the Phillips 66 Stock Fund or the Phillips 66 Leveraged Stock Fund.

71.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, there were more than 17,000 participants in the Plan at the start of the class period who had account balances in the Plan, and over $700,000,000 in Plan assets were invested in the two funds at issue. Accordingly, Plaintiffs believe there are thousands of Plan participants whose Plan accounts included investments in the Phillips 66 Funds during the Class Period.

72.     Multiple questions of law and fact common to the Class exist, including, but not limited to:

a.      whether Defendants each owed a fiduciary duty to the Plan, Plaintiffs, and members of the Class;

b.      whether Defendants breached their fiduciary duties to the Plan, Plaintiffs, and members of the Class by failing to act prudently and solely in the interests of the Plan and the Plan's participants and beneficiaries;

c.      whether Defendants violated ERISA; and

d.      whether the Plan, Plaintiffs, and members of the Class have sustained damages and, if so, what is the proper measure of damages.

73.     Plaintiffs' claims are typical of the claims of the members of the Class because the Plan, Plaintiffs, and the other members of the Class each sustained damages arising out of Defendants' uniform wrongful conduct in violation of ERISA as complained of herein.

74.     Plaintiffs will fairly and adequately protect the interests of the Plan and members of the Class because they have no interests antagonistic to or in conflict with those of the Plan or the Class. In addition, Plaintiffs have retained counsel skilled and experienced in class action litigation, complex litigation, and ERISA litigation.

75.     Class action status in this ERISA action is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical

matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

76.     Class action status is also warranted under Rule 23(b)(1)(A) and (b)(2) because: (i) prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants; and (ii) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

## **CAUSES OF ACTION**

### **FIRST CAUSE OF ACTION**
### **(Breach of Fiduciary Duty)**

77.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 76, above.

78.     During the Class Period, the Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or *de facto* fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both.

79.     The scope of the Defendants fiduciary duties and responsibilities included managing the assets of the Plan for the sole and exclusive benefit of participants and beneficiaries and with the care, skill, diligence, and prudence required by ERISA. Defendants were responsible for, among other things, selecting and offering only prudent investment options, eliminating imprudent options, evaluating the merits of the Plan's

investments on an ongoing basis, administering the operations of the Plan and taking all necessary steps to ensure that the Plan's assets were invested prudently.

80.     According to the United States Department of Labor ("DOL") regulations and case law interpreting ERISA, a fiduciary's investment or investment course of action is prudent if: (a) he has given appropriate consideration to those facts and circumstances that, given the scope of such fiduciary's investment duties, the fiduciary knows or should know are relevant to the particular investment or investment course of action involved, and (b) he has acted accordingly.

81.     Defendants had a duty to follow a regular, appropriate systematic procedure to evaluate the Phillips 66 Funds as investments in the Plan. They breached that duty and failed to conduct an appropriate investigation of the merits of continued investment in the Phillips 66 Funds.

82.     Defendants could not possibly have acted prudently when they continued to offer the Phillips 66 Stock Funds as Plan investment options because, among other reasons:

a.     they knew of and/or failed to understand that Phillips 66 stock was not a qualifying employer security;

b.     they knew of and/or failed to investigate the risks of Phillips 66 stock; and

c.     The risk associated with the investment in the Phillips 66 Funds during the Class Period was by far above and beyond the normal, acceptable risk for retirement plan investments.

83.     Knowing these extraordinary risks, the Defendants had a duty to remove the Phillips 66 Funds as investment options for the Plan's participants and prohibit the Plan from continuing to invest in Phillips 66 stock.

20

84.    Defendants breached their fiduciary duties because they improperly allowed the Plan to offer the Phillips 66 Funds as investment options for the Plan, even though they knew that the Funds were undiversified and had an established track record of being more volatile and riskier for Plan Participants than prudently diversified alternative investment options, without any expectation of higher returns.

85.    Defendants breached their fiduciary duties because they improperly allowed the Plan to continue investing in Phillips 66 Funds, even though they knew that the Funds were undiversified and had an established track record of being more volatile and riskier for Plan Participants than prudently diversified alternative investment options, without any expectation of higher returns.

86.    Defendants breached their fiduciary duties because they failed to liquidate the Funds' substantial holdings in Phillips 66 common stock thereby imprudently thereby subjecting the Plan and its participants to the risks associated with being too heavily invested in one company ("company risk") and one industry ("industry risk").

87.    Defendants also breached their fiduciary duties by failing to diversify Plan investments. Defendants were bound by the duty to diversify the Plan's investments "so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." *See* ERISA § 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C). Defendants acknowledged the importance of diversification but did not diversify the Plan's assets. *See* SPD at 12.

88.    The Plan had more than 10% of its assets invested in the Phillips 66 Funds during the Class Period, even though: (a) that represented over 1,400% greater

concentration than the next largest single stock in the Plan subject to ERISA's diversification requirements (DuPont); (b) Defendants later diversified away the Plan's holding in DuPont, while not acting to diversify the Plan's holding in Phillips 66; (c) the Plan's investment in Phillips 66 represented 4,600 percent greater concentration than the average mutual fund at the time that did invest any of its assets in Phillips 66; (d) the Plan's investment in Phillips 66 represented 3,200 percent greater concentration than Defendants themselves opted to put into Phillips 66 when saving for ConocoPhillips' employees' retirement through the Retirement Plan, where Defendants' money was at risk; and (e) Phillips 66 had a demonstrated track record of being riskier than prudently diversified equities, without an expectation of higher returns.

89.    Despite the power and ability to do so, Defendants did not take any actions to diversify the Plan's assets and end the Plan's investments in the Phillips 66 Fund. Defendants' failure to properly diversify the Plan's assets caused the Plan to suffer over $260 million in losses during the Class Period.

90.    Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109, 1132(a)(2) and (a)(3), Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

### SECOND CAUSE OF ACTION
### (Co-Fiduciary Liability)

91.    Plaintiffs incorporate by reference the allegations in paragraphs 1 through 90, above.

92.     ERISA § 405(a), 29 U.S.C. § 1105(a), imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if he knows of a breach and fails to remedy it, knowingly participates in a breach, or enables a breach. Defendants breached all three provisions.

93.     ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), imposes co-fiduciary liability on a fiduciary for a fiduciary breach by another fiduciary if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. As alleged above, each Defendant knew of the breaches by the other fiduciaries and made no efforts, much less reasonable ones, to remedy those breaches.

94.     The Committee and its individual members were responsible for the Plan's investments and, as the Plan Administrator, responsible for controlling and managing the assets of the Plan.

95.     ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1), imposes liability on a fiduciary for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach. Defendants knowingly participated in each others' breaches because, as alleged above, they participated in the management of the Plan's improper investment in the Phillips 66 Funds and, upon information and belief, knowingly participated in the improper management of that investment by the other Defendants.

96.     ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2), imposes liability on a fiduciary if, by failing to comply with ERISA § 404(a)(1), 29 U.S.C. §1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled another fiduciary to commit a breach.

97.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiffs and other participants and beneficiaries, lost millions of dollars of retirement savings.

98.     Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109, 1132(a)(2) and (a)(3), each of the Defendants is liable to restore the losses to the Plan caused by his or her breaches of the fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## **CAUSATION**

99.     The Plan suffered over $260 million in losses because Plan assets were imprudently invested in the stock of one company, Phillips 66, instead of a diversified basket of US equities, in breach of the Defendants' fiduciary duties.[4]

100.    Had the Defendants properly discharged their fiduciary duties and/or their co-fiduciary duties, the Plan and its participants would have avoided a substantial portion of the losses suffered through the Plan's continued investment in the Phillips 66 Fund. The Plan should have divested itself of the Phillips 66 Funds during the Class Period.

---

[4] This damages figure compares the returns of the Phillips 66 Funds to the Vanguard Institutional Index I, a diversified mutual fund offered in the Plan, however the damages are not materially different against other broadly diversified US Equity alternatives that could have prudently replaced the Phillips 66 Funds.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for:

A.    A Declaration that the Defendants have breached their ERISA fiduciary duties to the participants;

B.    An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from their breaches of their fiduciary duties, including loss of vested benefits to the Plan resulting from imprudent investment of the Plan's assets; to restore to the Plan all profits Defendants made through use of the Plan's assets; and to restore to the Plan all profits which the Plan and participants would have made if Defendants had fulfilled their fiduciary obligations;

C.    An Order enjoining each of the Defendants from any further violations of their ERISA fiduciary obligations;

D.    An Order requiring Defendants to appoint one or more independent fiduciaries to participate in the management of the Plan's investments;

E.    Actual damages in the amount of any losses the Plan suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses;

F.    An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

G.    An Order awarding attorneys' fees pursuant to the common fund doctrine, 29 U.S.C. § 1132(g), and other applicable law; and

H.    An Order for equitable restitution and other appropriate equitable and injunctive relief against all Defendants.

Dated: January 18, 2023

Respectfully submitted,

*s/ James L. Colvin, III*

**LATHAM, STEELE, LEHMAN, KEELE, RATCLIFF, FREIJE & CARTER, P.C**
James Colvin, OBA No. 20654
1515 E. 71st Street, Suite 200
Tulsa, OK 74136
Telephone: (918) 970-2000
Facsimile: (918) 970-2002
E-mail: jcolvin@law-lsl.com

**LOCAL COUNSEL**


**IZARD KINDALL & RAABE LLP**
Robert A. Izard
Douglas P. Needham
Oren Faircloth
29 South Main Street, Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290
E-mail: rizard@ikrlaw.com
E-mail: dneedham@ikrlaw.com
E-mail: ofaircloth@ikrlaw.com


**BAILEY & GLASSER LLP**
Gregory Y. Porter
Mark G. Boyko
1054 31st Street, NW, Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
E-mail: gporter@baileyglasser.com
E-mail: mboyko@baileyglasser.com

**Attorneys for Plaintiffs**