United States District Court
Southern District of Texas

**ENTERED**

October 31, 2024

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN E. QUIGLEY and FRANCIS QUIGLEY, on behalf of the ConocoPhillips Savings Plan and a class of similarly situated participants of the Plan, | § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-24-0508 |
| CONOCOPHILLIPS COMPANY, THE CONOCOPHILLIPS COMPANY BENEFITS COMMITTEE, and JOHN/JANE DOES 1-5, | § § § § § | |
| Defendants. | § § | |

### MEMORANDUM OPINION AND ORDER

Plaintiffs, John E. Quigley and Francis Quigley, bring this action pursuant to § 502(a)(2) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(2), individually and on behalf of other similarly situated participants and beneficiaries of the ConocoPhillips Savings Plan (the "Plan"), and representatively on behalf of the Plan, against defendants, ConocoPhillips Company ("ConocoPhillips" or "the Company"), the ConocoPhillips Company Benefits Committee ("the Committee"), and John/Jane Does 1-5 ("Individual Defendants") (collectively, "Defendants"),[1] for breach of fiduciary duties of prudence and

---

[1] Class Action Complaint ("CAC"), Docket Entry No. 1.

-1-

diversification,[2] and for co-fiduciary liability and knowing participation in a breach of fiduciary duty,[3] during a proposed Class Period beginning on January 18, 2017, and ending on the date judgment is entered in this action.[4]  Plaintiffs seek declaration that the Defendants have breached their ERISA fiduciary duties, an order enjoining the Defendants from further violations of their ERISA fiduciary duties, an order requiring the Defendants to appoint one or more independent fiduciaries to participate in management of the Plan's assets, actual damages in the amount of any losses the Plan suffered to be allocated among the participants' individual accounts in proportion to the account's losses, equitable restitution and other appropriate equitable and injunctive relief, attorneys' fees, and costs.[5]

Pending before the court is Defendants ConocoPhillips Company and ConocoPhillips Company Benefits Committee's Motion to Dismiss Plaintiffs' Class Action Complaint ("Defendants' Motion to Dismiss") (Docket Entry No. 56), which seeks dismissal of the claims asserted by Francis Quigley under Federal Rule of Civil Procedure 12(b)(1) because she lacks standing, and seeks dismissal of the claims asserted by John E. Quigley under Federal Rule of

---

[2]Id. at 19-22 ¶¶ 77-90.  All page numbers for docket entries refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[3]Id. at 22-24 ¶¶ 91-98.

[4]Id. at 1 ¶ 1.

[5]Id. at 25.

Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted.[6]  Alternatively, Defendants seek dismissal of the claims asserted against ConocoPhillips because it is not a fiduciary, and seeks dismissal of all of Plaintiffs' claims as barred by ERISA's statute of repose, 29 U.S.C. § 1113.[7]  Also pending are Plaintiffs' Opposition to Defendants ConocoPhillips Company and ConocoPhillips Company Benefits Committee's Motion to Dismiss Plaintiffs' Class Action Complaint ("Plaintiffs' Opposition") (Docket Entry No. 57), and Defendants ConocoPhillips Company and ConocoPhillips Company Benefits Committee's Reply in Support of Their Motion to Dismiss Plaintiffs' Class Action Complaint ("Defendants' Reply") (Docket Entry No. 58).  For the following reasons Defendants' Motion to Dismiss will be granted.

## I.  **Plaintiffs' Allegations of Fact**

The Plan is an employee benefit plan within the meaning of ERISA §§ 3(2)(A) and 3(3), 29 U.S.C. §§ 1002(2)(A) and 1002(3).[8] The Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34) because it provides individual accounts for each participant and benefits based on the amount contributed to the participant's account, and

---

[6]Defendants' Motion to Dismiss, Docket Entry No. 56, pp. 13-15.

[7]Id. at 16.

[8]CAC, Docket Entry No. 1, p. 6 ¶ 21.

any income, expenses, gains and losses that could be allocated to such participant's accounts.[9]

On April 30, 2012, ConocoPhillips transferred, *i.e.*, spun-off, its "downstream businesses," to become a separate, independent company: Phillips 66 Company, Inc. ("Phillips 66"). ConocoPhillips and Phillips 66 referred to the transactions that effectuated the spin-off as the "Separation."[10]  In connection with the Separation, ConocoPhillips and Phillips 66 entered an Employee Matters Agreement ("EMA") providing that employees of Phillips 66 would no longer participate in benefit plans sponsored by ConocoPhillips.[11] Once the Separation was complete, participants invested in the ConocoPhillips Stock Fund and the ConocoPhillips Leveraged Stock Fund received one share of Phillips 66 stock for every two shares of ConocoPhillips stock.  The shares of Phillips 66 stock were transferred to a new Phillips 66 Stock Fund and a new Phillips 66 Leveraged Stock Fund ("the Funds").[12]  Because the Plan was only available to ConocoPhillips employees, the Phillips 66 Funds were not qualified employer securities, which would have exempted Defendants from the duties of diversification and prudence with respect to diversification.[13]

---

[9] Id. ¶ 22.

[10] Id. ¶ 23.

[11] Id. ¶ 24.

[12] Id. ¶ 25.

[13] Id. at 7 ¶ 26.

## II.  **Rule 12(b)(1) Motion to Dismiss**

Defendants argue that the court should dismiss the claims asserted by Francis Quigley under Rule 12(b)(1) for lack of standing because "she never held any interest in the Phillips 66 Funds that are the basis of Plaintiffs' claims and could not have suffered any injury from an investment in those funds."[14] Plaintiffs respond that they "will dismiss the claims of Frances Quigley."[15]  Although Plaintiffs have not moved to dismiss Francis Quigley's claims, because Defendants argue that those claims should be dismissed for lack of standing, and because Plaintiffs do not dispute that argument, Francis Quigley's claims will be dismissed without prejudice for want of jurisdiction due to lack of standing. See Association of American Physicians and Surgeons Educational Foundation v. American Board of Internal Medicine, 103 F.4th 383, 396 (5th Cir. 2024) (observing that Rule 12(b)(1) dismissals for lack of lack standing should be without prejudice).

## III.  **Rule 12(b)(6) Motion to Dismiss**

Alleging that "Defendants breached ERISA's duty of prudence by allowing the Plan to invest in the Phillips 66 funds during the Class Period,"[16] and that Defendants violated their duty to

---

[14]Defendants' Motion to Dismiss, Docket Entry No. 56, p. 15.

[15]Plaintiffs' Opposition, p. 2 n. 2.

[16]CAC, Docket Entry No. 1, p. 7.

diversify the Plan's investments,[17] Plaintiffs assert causes of action for breach of fiduciary duty,[18] and co-fiduciary liability.[19] Defendants argue that these claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs fail "to plausibly allege any violation of the duties of diversification or prudence."[20]   Defendants also argue that ConocoPhillips should be dismissed because "it is not a fiduciary that may be held liable for such claims,"[21] and that Plaintiffs' claims are time barred by ERISA's statute of repose, 29 U.S.C. § 1113.[22]   Plaintiffs respond that they "do not oppose dismissal of ConocoPhillips . . . [and] do not oppose dismissal of the Second Cause of Action for Co-Fiduciary Liability as to all Defendants."[23]   Therefore, the breach of fiduciary duty claims asserted against ConocoPhillips and the claims for co-fiduciary liability asserted against all defendants, will be dismissed with prejudice.   See Forby v. One Technologies, L.P., 909 F.3d 780, 784 (5th Cir. 2018) ("prejudice attaches to a Rule 12(b)(6) dismissal").

---

[17]Id. at 14.

[18]Id. at 19-22 ¶¶ 77-90.

[19]Id. at 22-24 ¶¶ 91-98.

[20]Defendants' Motion to Dismiss, Docket Entry No. 56, p. 15. See also Defendants' Reply, Docket Entry No. 58, pp. 1-2.

[21]Id. at 16.

[22]Id.

[23]Plaintiffs' Opposition, Docket Entry No. 57, p. 1 n. 1.

**A.   Standard of Review**

A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom. Cloud v. United States, 122 S. Ct. 2665 (2002). To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 127 S. Ct. at 1965). When considering a motion to dismiss, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. Id. Nevertheless, "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." Id. When ruling on a Rule 12(b)(6) motion, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010).

**B.    Applicable Law**

Regarding breach of fiduciary duty, ERISA provides that

[a]ny person who is a fiduciary with respect to a plan
who breaches any of the responsibilities, obligations, or
duties imposed upon fiduciaries by this subchapter shall
be personally liable to make good to such plan any losses
to the plan resulting from each such breach, and to
restore to such plan any profits of such fiduciary which
have been made through use of assets of the plan by the
fiduciary, and shall be subject to such other equitable
or remedial relief as the court may deem appropriate,
including removal of such fiduciary. . .

29 U.S.C. § 1109(a). ERISA establishes a "prudent man standard of

care" for fiduciaries. <u>See</u> 29 U.S.C. § 1104(a). This standard

imposes upon fiduciaries four interrelated duties, <u>see</u> 29 U.S.C.

§ 1104(a)(1), three of which are at issue in this action: (1) the

duty to act "with care, skill, prudence, and diligence under the

circumstances then prevailing that a prudent man acting in a like

capacity and familiar with such matters would use in the conduct of

an enterprise of a like character and with like aims," 29 U.S.C.

§ 1104(a)(1)(B); (2) the duty to "diversify[] the investments of

the plan so as to minimize the risk of large losses, unless under

the circumstances it is clearly prudent not to do so," 29 U.S.C.

§ 1104(a)(1)(C); and (3) the duty to act "in accordance with the

documents and instruments governing the plan insofar as [they] are

consistent with the provisions of [ERISA]." 29 U.S.C.

§ 1104(a)(1)(D).

To state an ERISA breach of fiduciary duty claim Plaintiffs

"must plausibly allege that [Defendants] breached one of these

-8-

duties, causing a loss to the . . . [P]lan." Schweitzer v. Investment Committee of Phillips 66 Savings Plan, 960 F.3d 190, 195 (5th Cir. 2020), cert. denied, 142 S. Ct. 706 (2021). See also Kopp v. Klein, 894 F.3d 214, 219 (5th Cir. 2018) (per curiam). There is no dispute that Plaintiffs have alleged that defendants are Plan fiduciaries and that their alleged breaches of fiduciary duties harmed the Plaintiffs. Defendants' challenge to Plaintiffs' claims focuses on the sufficiency of the second element, i.e., that Defendants breached a fiduciary duty imposed by ERISA.

Observing that "an ERISA fiduciary's duty is 'derived from the common law of trusts,'" the Supreme Court has held that "[i]n determining the contours of an ERISA fiduciary's duty, courts often must look to the law of trusts." Tibble v. Edison International, 135 S. Ct. 1823, 1828 (2015) (quoting Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc., 105 S. Ct. 2833, 2840 (1985)). See also Fifth Third Bankcorp v. Dudenhoeffer, 134 S. Ct. 2459, 2472 (2014) (likening ERISA's duty of prudence to that of the law of trusts). The Tibble Court observed that "[u]nder trust law, a trustee has a continuing duty to monitor trust investments and remove imprudent ones[, and that t]his continuing duty exists separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset." 135 S. Ct. at 1828. The Court therefore concluded that

> a fiduciary normally has a continuing duty of some kind
> to monitor investments and remove imprudent ones. A

-9-

> plaintiff may allege that a fiduciary breached the duty
> of prudence by failing to properly monitor investments
> and remove imprudent ones.  In such a case, so long as
> the alleged breach of the continuing duty occurred within
> six years of suit, the claim is timely.

Id. at 1828-29.  Thus, even if an initial investment decision was made outside of ERISA's six-year statute of repose, 29 U.S.C. § 1113 (1), "[a] plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." Id. at 1829.  See also Perkins v. United Surgical Partners International, Inc., No. 23-10375, 2024 WL 1574342, * 2 (5th Cir. April 11, 2024) ("In the ERISA context . . . '[a] plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones.'") (quoting Tibble, 135 S. Ct. at 1829).


C.   **Application of the Law to the Plaintiffs' Allegations**

1.   <u>Plaintiffs Fail to State a Breach of Fiduciary Duty Claim</u>

Asserting that Plaintiffs' claims disputing the propriety of the Phillips 66 Funds should

> be familiar because they are mirror images of claims
> involving the same plaintiffs' lawyers dismissed by this
> Court several years ago in <u>Schweitzer ex rel. Phillips 66</u>
> <u>Savings Plan v. Investment Committee of Phillips 66</u>
> <u>Savings Plan,</u> 312 F. Supp. 3d 608 (S.D. Tex 2018) (Lake,
> J.) — a case that involved <u>ConocoPhillips</u> stock funds in
> the <u>Phillips 66</u> plan,[24]

---

[24]Defendants' Motion to Dismiss, Docket Entry No. 56, p. 6.
<u>See also id.</u> at 11 ("In 2017, the same lawyers filed the same types
(continued...)

Defendants argue that "[a]s in <u>Schweitzer,</u> this Court should dismiss Plaintiffs' claims here because they fail to plausibly allege any violation of the duties of diversification or prudence."[25]  Defendants argue that

> [t]his case is the mirror image of <u>Schweitzer</u> because it involves the same types of claims concerning legacy stock against the ConocoPhillips Plan.  That is, Plaintiffs have sued the ConocoPhillips Plan complaining about the retention of the Phillips 66 Funds instead of the Phillips 66 Savings Plan and its retention of the ConocoPhillips funds, which were at issue in <u>Schweitzer.</u>[26]

In <u>Schweitzer</u> the court held that the plaintiffs failed to state a claim for breach of the duty to diversify because the plaintiffs did not challenge the plan's overall slate of investment options, and because Defendants did not mandate that participants' assets remain in ConocoPhillips Funds.  312 F. Supp. 3d at 620. Observing that "Plaintiffs' claim that Defendants breached the duty of prudence by holding ConocoPhillips Funds [was] based on publicly available information," <u>id.</u> at 622, and that Plaintiffs "neither alleged in their Complaint nor argued in their Response that any 'special circumstances' [were] present," <u>id.,</u> the court held that

---

[24](...continued)
of claims against the investment committee of the Phillips 66 Savings Plan, alleging that the defendants breached their duty of diversification and prudence by retaining ConocoPhillips stock in the Phillips 66 Savings Plan after the spinoff.").

[25]<u>Id.</u> at 6.  <u>See also id.</u> at 15; Defendants' Reply, Docket Entry No. 58, pp. 1-2.

[26]Defendants' Motion to Dismiss, Docket Entry No. 56, p. 12.

plaintiffs' claim for breach of the duty of prudence was foreclosed by the holding in <u>Dudenhoeffer</u>, 134 S. Ct. at 2471, that "where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances."[27] <u>See Schweitzer</u>, 312 F. Supp. 3d at 621-22.   The court also held that the plaintiffs failed to state a claim for breach of the duty to engage in an adequate process for evaluating the prudence of continuing to hold the ConocoPhillips Funds because they failed to allege that an adequate investigation would have revealed anything other than the publicly available information that allegedly established the Funds were a risky investment option.   <u>Id.</u> at 622-23.   The Fifth Circuit affirmed <u>Schweitzer</u>, 960 F.3d at 190, and the Supreme Court denied <u>certiorari</u>, 142 S. Ct. at 706.

The Fifth Circuit held that the plaintiffs failed to state a claim for breach of the duty to diversify because their complaint did not allege that the plan failed to offer diversified investment options or failed to warn of the risks of undiversified investments.   <u>Schweitzer</u>, 960 F.3d at 196.

---

[27]"Special circumstances" include factors that affect "the reliability of the market price as an unbiased assessment of the security's value in light of all public information." <u>Dudenhoeffer</u>, 134 S. Ct. at 2472 (internal quotation marks and citations omitted).

The Fifth Circuit held that plaintiffs' duty-of-prudence claim had "two wings," but that neither stated a claim for which relief may be granted.  960 F.3d at 197-199.  The first wing alleged that "the Fiduciaries should have known from publicly available information that the stock market underestimated the risk of holding ConocoPhillips stock."  Id. at 197.  The Fifth Circuit held that claim foreclosed by Dudenhoeffer. Id.  The second wing alleged that "the ConocoPhillips Funds were imprudent because of the risk inherent in failing to diversify."  Id.  Observing that Dudenhoeffer and its progeny did not apply to this wing of plaintiffs' prudence claim because it was not based on publicly available information, id., the court concluded that Plaintiffs "plausibly alleged that the ConocoPhillips Funds, by its resulting concentration of investment, became an imprudent investment with the spinoff.  But it does not follow that the Fiduciaries were obligated to force Plan participants to divest from the Funds." Id. at 198.  Observing that ERISA does not require fiduciaries to act as personal investment advisors and gives employees the responsibility and freedom to choose how to invest their funds, the Fifth Circuit reasoned that "ERISA imposed other obligations, which the Fiduciaries met."  Id.  The Fifth Circuit explained that the defendants "repeatedly provided Plan participants with the statutorily mandated warning against holding 'more than 20 percent of a portfolio in the security of one entity,'" id. at 198-99, and

that "[b]y closing the ConcocoPhillips Funds to new investments immediately after the spin-off, the Fiduciaries also ensured that they were not offering participants an imprudent investment option." Id. at 199 & n. 49 (citing Langbecker v. Electronic Data Systems Corp., 476 F.3d 299, 308 n. 18 (5th Cir. 2007) ("Under ERISA, the prudence of investments or classes of investments offered by a plan must be judged individually.")).

The Fifth Circuit also held that plaintiffs failed to state a claim for breach of the duty "to follow a regular, appropriate, systematic procedure to evaluate the ConocoPhillips Funds as investments in the Plan," id., because that claim rested solely on defendants' procedural lapses, and did not plausibly allege either that defendants would have acted differently had they discussed other options or that an alternative course of action would have prevented their losses. Id. at 199-200 (citing Kopp, 894 F.3d at 221) ("Kopp's duty-of-prudence claim cannot rest solely on the Defendants' procedural failings. Instead, Kopp must allege facts to support the conclusion that the Defendants would have acted differently had they engaged in proper monitoring — and that an alternative course of action could have prevented the Plan's losses. Put another way, Kopp must allege that the Defendants' supposed procedural failings led to the Plan's losses.")).

-14-

        (a)  Duty to Diversify

    Plaintiffs  allege  that  Defendants  breached  their  duty  of

prudence  by  failing  to  diversify  Plan  investments.[28]   Defendants

argue  that  the  CAC  fails  to  state  a  claim  for  breach  of  the  duty  of

diversification  because

> it is undisputed that the Plan offers a diverse menu of
> investment options from which participants may allocate
> their individual holdings and that the Plan repeatedly
> warned  participants  about  the  risks  of  failing  to
> diversify and holding a concentrated portfolio, which is
> all that the duty of diversification requires.[29]

Defendants also argue that

> [a]s in Schweitzer, "Plaintiffs have not alleged that the
> [f]iduciaries did not offer sufficient investment options
> or failed to warn Plan participants of the risk of a
> concentrated portfolio." 960 F.3d at 196.  Nor could
> they, as [shown by inter alia,] Ex. 3, 2021 Summary Plan
> Description   [("SPD")]   at   12   (advising   that
> diversification "can reduce (but not eliminate) the
> inherent risk of investing"). . .[30]

    Plaintiffs concede that their claims for breach of the duty to

diversify are subject to dismissal pursuant to Schweitzer, 960 F.3d

at  190.[31]   Plaintiffs'  claim  for  breach  of  the  duty  to  diversify

will therefore be dismissed with prejudice.

---

[28]CAC, Docket Entry No. 1, pp. 14-15 ¶¶ 55-61, and 21 ¶ 87.

[29]Defendants' Motion to Dismiss, Docket Entry No. 56, p. 15.

[30]Id. at 18 (citing the 2021 Summary Plan Description, p. 12,
Exhibit 3 to Defendants' Motion to Dismiss, Docket Entry No. 56-4,
p. 15).  Because the CAC cites the Plan's "SPD at 12" in support of
the statement that "Defendants acknowledged the importance of
diversification," Docket Entry No. 1, p. 21 ¶ 87, the court may
consider this statement from the SPD when ruling on Defendants'
Motion to Dismiss.  See Lone Star Fund, 594 F.3d at 387.

[31]Plaintiffs' Opposition, Docket Entry No. 57, p. 3.

(b)   Duty of Prudence

Plaintiffs allege that Defendants breached both their substantive and procedural duties of prudence by _inter alia_ "fail[ing] to conduct an appropriate investigation of the merits of continued investment in the Phillips 66 Funds,"[32] failing "to liquidate the Funds' substantial holdings in Phillips 66 common stock thereby imprudently subjecting the Plan and its participants to the risks associated with being too heavily invested in one company ('company risk') and one industry ('industry risk')"[33] and

> improperly allow[ing] the Plan to continue investing in Phillips 66 Funds, even though they knew that the Funds were undiversified and had an established track record of being more volatile and riskier for Plan Participants than prudently diversified alternative investment options, without any expectation of higher returns.[34]

### (1)   Substantive Duty of Prudence Claims

Asserting that "there are 'two wings of Plaintiffs' [substantive] duty-of-prudence claim,'" Defendants argue that "just as in _Schweitzer_, neither wing states a claim."[35]

---

[32] CAC, Docket Entry No. 1, p. 20 ¶ 81.

[33] _Id._ at 21 ¶ 86. _See also id._ at 20 ¶ 83 ("Defendants had a duty to remove the Phillips 66 Funds as investment options for the Plan's participants . . .").

[34] _Id._ ¶ 85. _See also id._ at 8-9 ¶ 35 (alleging that "there should have been heightened cause for concern because Phillips 66 had, post-spinoff and prior to the start of the Class Period, established a track record of being particularly volatile"); _Id._ at 9 ¶ 36 (alleging that Defendants failed to recognize the imprudence of Phillips 66 stock based on its "track record established between April 30, 2012, and December 31, 2016").

[35] Defendants' Motion to Dismiss, Docket Entry No. 56, p. 19.

(i)  "First Wing" of Substantive Claims

Citing <u>inter alia</u> Plaintiffs' allegations that Phillips 66 stock "had an established track record of being more volatile and riskier for Plan participants than prudently diversified alternative investment options,"[36] Defendants argue that as in <u>Schweitzer,</u> 960 F.3d at 197, the "first wing" of Plaintiffs' duty-of-prudence claim "alleges the [f]iduciaries should have known from publicly available information that the stock market underestimated the risk of holding [Phillips 66] stock."[37]  Defendants argue that "as <u>Schweitzer</u> explained, '<u>Dudenhoeffer</u> addressed this line of argument, holding that "where a stock is publicly traded, allegations that a fiduciary should have recognized <u>from publicly available information alone</u> that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances."'"[38]  Asserting that "Plaintiffs allege no 'special circumstances' showing that Defendants should have recognized that the market was over- or undervaluing the risk of Phillips 66 stock,"[39]  Defendants argue that "<u>Dudenhoeffer</u> forecloses Plaintiffs' claim that retention of

---

[36]CAC, Docket Entry No. 1, p. 21 ¶ 85.

[37]Defendants' Motion to Dismiss, Docket Entry No. 56, p. 19 (citing <u>Schweitzer,</u> 960 F.3d at 197).

[38]<u>Id.</u> (quoting <u>Schweitzer,</u> 960 F.3d at 197 (quoting <u>Dudenhoeffer,</u> 134 S. Ct. at 2471) (emphasis added by <u>Schweitzer</u>)).

[39]<u>Id.</u> at 20.

the Phillips 66 Funds breached Defendants' duty of prudence because they were too volatile or excessively risky, and the first wing of Plaintiff's duty-of-prudence claim therefore fails to state a claim."[40]

Plaintiffs concede that the <u>Schweitzer</u> court's application <u>Dudenhoeffer</u> "controls this [c]ourt's analysis of the first wing of th[eir duty-of-prudence] claim."[41]  The court therefore concludes that Plaintiffs fail to state a claim for breach of the duty of prudence premised on allegations that Defendants "improperly allowed the Plan to continue investing in Phillips 66 Funds, even though they knew that the Funds were undiversified and had an established track record of being more volatile and riskier for Plan Participants than prudently diversified alternative investment options."[42]

(ii) "Second Wing" of Substantive Claims

Citing <u>inter alia</u> Plaintiffs' allegations that

Defendants breached their fiduciary duties because they failed to liquidate the Funds' substantial holdings in Phillips 66 stock . . . thereby subjecting the Plan and its participants to the risks associated with being too heavily invested in one company . . . and one industry,[43]

_____

[40]<u>Id.</u>

[41]Plaintiffs' Opposition, Docket Entry No. 57, p. 3.

[42]CAC, Docket Entry No. 1, p. 21 ¶ 85.

[43]Defendants' Motion to Dismiss, Docket Entry No. 56, p. 20
(continued...)

-18-

Defendants argue that "[f]or the same reasons as in <u>Schweitzer</u>, the second wing of Plaintiffs' duty-of-prudence claim fails."[44]

Conceding that the "second wing" of their substantive prudence claim is the same as the "second wing" of the <u>Schweitzer</u> prudence claim,[45] <u>i.e.</u>, "that the [single stock funds at issue] were imprudent because of the risk inherent in failing to diversify," 960 F.3d at 197, Plaintiffs argue that this wing of their claim is not subject to dismissal because <u>Schweitzer</u> held that "Plaintiffs alleged a breach of the second wing of the duty of prudence,"[46] and because <u>Hughes v. Northwestern University,</u> 142 S. Ct. 737 (2022), "overruled <u>Schweitzer's</u> **only** rationale for dismissing the second wing of the prudence claim."[47]   Citing <u>Stegemann v. Gannett,</u> 970

---

[43](...continued)
(quoting CAC, Docket Entry No. 1, p. 21 ¶ 86).  <u>See also id.</u>
(citing CAC, Docket Entry No. 1, pp. 2 ¶ 6 ("Prudent fiduciaries of retirement plans would not have permitted such a concentrated investment in the volatile stock of a single company, particularly for so long. Defendants breached their duties under ERISA by allowing the Plan to have an unreasonably high percentage of its assets invested in Phillips 66 common stock during the Class Period."), and 8-9 ¶ 35 ("While a single stock fund, particularly in a volatile industry like energy, is always risky, there should have been heightened cause for concern because Phillips 66 had, post spinoff and prior to the start of the class Period, established a track record of being particularly volatile.").

[44]<u>Id.</u> at 21.

[45]Plaintiffs' Opposition, Docket Entry No. 57, p. 5 (citing <u>Schweitzer,</u> 960 F.3d at 198 ("Plaintiffs have plausibly alleged that the ConocoPhillips Funds, by its resulting concentration of investment, became an imprudent investment with the spinoff.")).

[46]<u>Id.</u>

[47]<u>Id.</u> at 4.

F.3d 465, 481-84 (4th Cir. 2020), <u>cert. denied sub nom. Gannett</u> <u>Company, Inc. v. Quatrone,</u> 142 S. Ct. 707 (2021), Plaintiffs argue that in an analogous case "the Fourth Circuit held . . . participant choice does not bar a claim regarding the imprudence of a company stock fund[] after a spin-off."[48]

Asserting that "<u>Hughes</u> and <u>Schweitzer</u> are in accord and instruct courts to apply a context-specific analysis to duty-of-prudence claims,"[49] Defendants reply that

> [c]ontrary to Plaintiffs' argument, <u>Schweitzer</u> did exactly what <u>Hughes</u> requires: <u>Schweitzer</u> considered all of the relevant context-specific facts, including the diversification warnings to participants, the frozen nature of the challenged funds, the rising market, and the plaintiffs' ability to sell their investments and reinvest in other funds (but not the challenged funds), in reaching a conclusion about whether a plausible violation of the duty of prudence had been alleged. It did not rely on a "categorical rule" or "exclusive focus" on investor choice.[50]

In <u>Hughes</u> the Supreme Court rejected the Seventh Circuit's determination that the availability of plaintiffs' preferred type of low-cost investments in the plan coupled with the participants' ultimate control over their investments excused the allegedly imprudent decision to include higher-cost investments in the plan. 142 S. Ct. at 741-42. But the <u>Hughes</u> Court did not hold that the plaintiffs had plausibly stated a claim for breach of the duty-of-

---

[48]<u>Id.</u> at 6.

[49]Defendants' Reply, Docket Entry No. 58, p. 2.

[50]<u>Id.</u> at 4.

prudence.   Instead, the Court remanded with directions for the Seventh Circuit to "consider whether petitioners have plausibly alleged a violation of the duty of prudence as articulated in Tibble, applying the pleading standard discussed in Ashcroft . . . [and] Twombly." Id. at 742.   The Court explained that "[b]ecause the content of the duty of prudence turns on the circumstances . . . prevailing at the time the fiduciary acts, § 1104(a)(1)(B), the appropriate inquiry will necessarily be context specific."   Id. (citing Dudenhoeffer, 134 S. Ct. at 2470-71).

In Schweitzer the Fifth Circuit rejected a categorical rule against single-stock funds in favor of the need for a "fact-specific focus of the duty of prudence."   960 F.3d at 198 & n. 39 (citing Tatum v. RJR Pension Investment Committee, 761 F.3d 346, 360 (4th Cir. 2014), cert. denied, 135 S. Ct. 2887 (2015) (rejecting argument that "[n]on-employer, single stock funds are imprudent per se due to their inherent risk")).   Thus, both Schweitzer and Hughes require courts to conduct a context-specific analysis of the facts alleged in a complaint to determine if plaintiffs have alleged a plausible breach of prudence claim. Defendants argue — and the court agrees — that "[t]his consistency between Schweitzer and Hughes explains why, in more than two years since the Supreme Court decided Hughes, no court has found that Hughes overruled Schweitzer."[51]

_____

[51] Id.

-21-

The Fifth Circuit identified the second wing of Plaintiffs'
prudence claim in <u>Schweitzer</u> to be "that the [single stock funds at
issue] were imprudent because of the risk inherent in failing to
diversify." 960 F.3d at 197. Plaintiffs argue that "[b]ecause
Defendants acknowledge that the Complaint in this case is the
mirror image of the Complaint in <u>Schweitzer, Schweitzer's</u> holding
that Plaintiffs alleged a breach of the second wing of the duty of
prudence controls as to the subject funds."[52]   But <u>Schweitzer</u> did
not hold that the second wing of the prudence claim asserted in
that case stated a plausible claim.   To the contrary, <u>Schweitzer</u>
upheld this court's Rule 12(b)(6) dismissal of the second wing of
the plaintiffs' prudence claim reasoning that

> [b]y closing the ConocoPhillips funds to new investments
> immediately after the spin-off, the Fiduciaries also
> ensured that they were not offering participants an
> imprudent investment option.   At that point, while
> blocked from adding more "eggs to the basket," Plaintiffs
> were free to sell of their investments at any time and
> reinvest in other funds.   With a rising market, they
> chose to retain the ConocoPhillips Funds . . . balancing
> the risk of a want of portfolio diversity against the
> rising values of ConocoPhillips stock — a risk against
> which the Fiduciaries urged caution.

<u>Id.</u> at 199.   The same reasoning applies here; the Fourth Circuit's
<u>Stegemann,</u> 970 F.3d 465, opinion does not persuade the court
otherwise.

As in <u>Schweitzer</u> this case involves stock of a single, non-
employer company retained after a spinoff in funds in which plan

---

[52]Plaintiffs' Opposition, Docket Entry No. 57, p. 5.

participants could retain or divest their holdings, but could not increase their holdings.[53]  By closing the Phillips 66 Funds to new investments immediately after the spin-off, Defendants ensured that they were not offering participants an imprudent investment option. At that point, while blocked from adding more "eggs to the basket," Plaintiffs were free to sell of their investments at any time and reinvest in other funds.  Moreover, while plan participants were warned about the risks of undiversified investments,[54] reasons for retaining investments in the Phillips 66 Funds included the potential that Phillips 66 stock would increase in value.  Citing Schweitzer's statement that courts "can, of course, take judicial notice of stock prices," 960 F.3d at 193 n. 3, Defendants assert without objection that

> Phillips 66 stock has more than quadrupled in value since the spinoff, rising from approximately $34 per share at the spinoff to a near all-time high of approximately $143 per share today; after small fluctuations during initial trading in 2012, it has never closed below its original $34-per share price.[55]

------

[53]See Employee Matters Agreement § 6.3(a), Exhibit 6 to Defendants' Motion to Dismiss, Docket Entry No. 56-7, p. 40. Because the CAC cites the Employee Matters Agreement for "providing that employees of Phillips 66 would no longer participate in benefit plans sponsored and maintained by ConocoPhillips," Docket Entry No. 1, p. 6 ¶ 24, the court may consider it when ruling on Defendants' Motion to Dismiss. See Lone Star Fund, 594 F.3d at 387.

[54]See 2021 Summary Plan Description, p. 12, Exhibit 3 to Defendants' Motion to Dismiss, Docket Entry No. 56-4, p. 15. Because the CAC cites the Plan's "SPD at 12" in support of the statements that "Defendants acknowledged the importance of diversification," Docket Entry No. 1, p. 21 ¶ 87, the court may consider it when ruling on Defendants' Motion to Dismiss. See Lone Star Fund, 594 F.3d at 387.

[55]Defendants' Motion to Dismiss, Docket Entry No. 56, p. 8.

In Stegemann the Fourth Circuit held that allegations that the plan fiduciaries failed to diversify a single-stock fund stated a claim for breach of the duty of prudence. Id. at 468. In addition to being non-binding on this court, Stegemann involved allegations that are distinguishable from the allegations in this case. For example, although as in this case Stegemann involved a single-stock fund that had been spun off and frozen to new investment, the Employee Matters Agreement governing that spin-off required "all outstanding investments" in the single-stock fund to be liquidated and reinvested in other investment funds offered by the Plan "on such dates and in accordance with such procedures as are determined by the [Plan] administrator." Id. at 470-71. Moreover, the plaintiffs alleged that when the spin-off occurred, the single-stock fund represented over 20% of the plan's total assets, id. at 471, that between the time the spin-off occurred and the decision to liquidate the single-stock fund, the plan's governing committee "repeatedly received risk warnings related to holding large quantities of the [single] stock," id., and that during the committee's period of inaction the stock price fell. Id. at 472. In this case Plaintiffs allege that at the time of the spin-off Phillips 66 stock represented "just under 15% of the Plan's assets"[56] and "[a]t the end of 2016 . . . [had fallen] to "13% of

---

[56]CAC, Docket Entry No. 1, p. 7 ¶ 27.

[P]lan assets."[57]  Plaintiffs do not allege that Defendants received warnings related to holding Phillips 66 stock, do not allege that the stock price fell, and have not objected to Defendants' assertion that "after small fluctuations during initial trading in 2012, it has never closed below its original $34-per share price."[58]

The court concludes, therefore, that like the first wing of Plaintiffs' prudence claim, the second wing is controlled by <u>Schweitzer</u> and, therefore, subject to dismissal for failure to state a plausible claim for breach of the duty of prudence.


### (2)   "Procedural" Duty of Prudence Claims

Citing Plaintiffs' allegations that

> Defendants had a duty to follow a regular, appropriate systematic procedure to evaluate the Phillips 66 Funds as investments in the Plan[, and that t]hey breached that duty and failed to conduct an appropriate investigation of the merits of continued investment in the Phillips 66 Funds,[59]

Defendants argue that <u>Schweizter</u> rejected a nearly identical claim.[60]

In <u>Schweitzer</u> the Fifth Circuit held that plaintiffs failed to state a claim for breach of the duty "to follow a regular,

---

[57]<u>Id.</u> at 10 ¶ 42.

[58]Defendants' Motion to Dismiss, Docket Entry No. 56, p. 8.

[59]CAC, Docket Entry No. 1, p. 20 ¶ 81.

[60]Defendants' Motion to Dismiss, Docket Entry No. 56, pp. 24-25.

-25-

appropriate, systematic procedure to evaluate the ConocoPhillips
Funds as investments in the Plan." 960 F.3d at 199. The Fifth
Circuit explained that it had

> considered and rejected a similar argument in <u>Kopp v.</u>
> <u>Klein[</u>, 894 F.3d at 221]. There, beneficiaries argued
> that — separate and apart from any substantive imprudence
> — the [d]efendants breached their "procedural" duty of
> prudence by failing to meet and discuss a possible course
> of action regarding the Plan's investment in [the
> challenged] stock. Their claim failed, however, as it
> rested solely on the fiduciaries' procedural lapses.
> Plaintiff's claim here fails for the same reason.

<u>Id.</u> at 199-200 (internal quotation marks and citations omitted).

In <u>Kopp</u> the Fifth Circuit explained that a

> duty-of-prudence claim cannot rest solely on the
> Defendants' procedural failings. Instead, [the
> plaintiff] must allege facts to support the conclusion
> that the Defendants would have acted differently had they
> engaged in proper monitoring — and that an alternative
> course of action could have prevented the Plan's losses.

894 F.3d at 221. Plaintiffs concede that the Fifth Circuit's
analysis of the "procedural" prudence claim in <u>Schweitzer</u> controls
the court's analysis of this claim.[61] The court concludes therefore
that Plaintiffs fail to state a claim for breach of the duty of
prudence premised on Defendants' alleged failure to investigate the
merits of continued investment in the Phillips 66 Funds.

2. <u>Plaintiffs' Claims Are Time Barred</u>

ERISA bars claims for alleged breaches of fiduciary duty
after the earlier of —

_____

[61]Plaintiffs' Opposition, Docket Entry No. 57, p. 4.

        (1) six years after (A) the date of the last action which
        constituted apart of the breach or violation, or (B) in
        the case of an omission the latest date on which the
        fiduciary could have cured the breach or violation . . .

29 U.S.C. § 1113(1).   The Supreme Court has referred to § 1113(1)

as "a statute of repose, which 'effect[s] a legislative judgment

that a defendant should be free from liability after the

legislatively determined period of time.'" Intel Corporation

Investment Policy Committee v. Sulyma, 140 S. Ct. 768, 774 (2020)

(quoting California Public Employees' Retirement System v. ANZ

Securities, Inc., 137 S. Ct. 2042, 2049, (2017)).

        Defendants argue that

        Plaintiffs claims are barred by ERISA's statute of repose
        because the conditions giving rise to the alleged
        breaches of fiduciary duty all existed at the time
        Phillips 66 was spunoff and the Phillips 66 Funds were
        created, which was more than 10 years before this lawsuit
        was filed.[62]

Citing inter alia Plaintiffs' allegations that "non-employer stock

funds are 'generally imprudent,'"[63] that "[t]he concentration in the

Funds was an imprudent and unnecessary undiversified risk,"[64] and

that the mere existence of a non-employer single-stock fund

violated Defendants duty to diversify,[65] Defendants argue that

"Plaintiffs attempt to plead around the statute of repose is

foreclosed by the allegations of their own Complaint."[66]

―――――――――――――――

        [62]Defendants' Motion to Dismiss, Docket Entry No. 56, p. 16.

        [63]Id. at 29 (quoting CAC, Docket Entry No. 1, p. 8 ¶ 33).

        [64]Id. (quoting CAC, Docket Entry No. 1, p. 10 ¶ 41).

        [65]Id. (quoting CAC, Docket Entry No. 1, pp 14-15 ¶¶ 55-61).

        [66]Id.

Asserting that application of ERISA's statute of repose is governed by <u>Tibble</u>, 135 S. Ct. 1823, and citing <u>Perkins</u>, 2024 WL 1574342, for relying on <u>Tibble</u> to hold that fiduciaries have a continuing duty to remove imprudent investment options,[67] Plaintiffs respond that their claims are not time barred because they have "repeatedly alleged that Defendants breached their ongoing duty to monitor investment options and remove imprudent ones, which falls squarely within <u>Tibble.</u>"[68]

In <u>Tibble</u> the Supreme Court held that "the Ninth Circuit erred by applying a statutory bar to a claim of a 'breach or violation' of a fiduciary duty without considering the nature of the fiduciary duty." 135 S. Ct. at 1827. Reasoning that "under trust law, a trustee has a continuing duty to monitor trust investments and remove imprudent ones," <u>id.</u> at 1828, the Court held that "[a] plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." <u>Id.</u> at 1829.

Plaintiffs' argument that their breach of fiduciary duty claims are not barred by ERISA's statute of repose because they "repeatedly alleged that Defendants breached their ongoing duty to monitor investment options and remove imprudent ones"[69] overlooks

---

[67]Plaintiffs' Opposition, Docket Entry No. 57, p. 7.

[68]<u>Id.</u> at 8.

[69]<u>Id.</u>

-28-

Plaintiffs' concession that their breach of prudence claim premised on these allegations is foreclosed by <u>Schweitzer</u>. Plaintiffs cannot rely on a claim that they concede is subject to dismissal for failure to state a claim to show that a related claim is not time barred. The court concludes therefore that Plaintiffs's breach of fiduciary duty claims are time barred because the facts alleged in their Complaint show that the only claim they argue survives Defendants' Motion to Dismiss is premised on acts or omissions that occurred more than six years before they filed suit.

## IV.   <u>Conclusions and Order</u>

For the reasons stated in § II, above, the claims asserted by Francis Quigley are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction because Defendants argue and Plaintiffs do not contest that Francis Quigley lacks standing to assert those claims.

For the reasons stated in § III, above, the claims asserted by John E. Quigley are **DISMISSED WITH PREJUDICE** under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief may be granted.

Defendants' Motion to Dismiss, Docket Entry No. 56, is **GRANTED.**

**SIGNED** at Houston, Texas, on this 31st day of October, 2024.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE